

**ENTERED**
**02/09/2010**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
|  | ) |
| CHARLES B. MARINO, | ) CASE NO. 09-33545-H3-11 |
| DINOSAUR OIL AND GAS, INC., | ) CASE NO. 09-33649-H3-11 |
| ITALIAN-AMERICAN OIL CO., | ) CASE NO. 09-33650-H3-11 |
|  | ) |
| Debtors | ) Jointly Administered |

MEMORANDUM OPINION

The court held a hearing on its Order to Show Cause (Docket No. 102) why the above captioned jointly administered chapter 11 cases should not be dismissed as it appears to be effectively a two party dispute.  After consideration of the pleadings, entire files in the above captioned matters, evidence, argument of counsel, the Response of the Railroad Commission of Texas (Docket No. 110) and Debtors' Trial Memorandum (Docket No. 117) filed by Dinosaur Oil & Gas, Inc. and Italian-American Oil Co., the following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered dismissing the above captioned cases.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

Charles B. Marino (Marino) filed an individual chapter 11 bankruptcy proceeding on May 22, 2009.  Marino was the founder and former sole shareholder of Dinosaur Oil and Gas, Inc. (Dinosaur) and Italian-American Oil Co. (Italian-American), collectively referred to as the "Corporations."  Dinosaur and Italian-American filed voluntary petitions under chapter 11 on May 28, 2009.  Dinosaur is listed as owning mineral rights and Italian-American is listed as an oil & gas operator.  These petitions were filed by Mary Josephine Stone (Stone), Marino's fiancee, who claims to be the sole shareholder of these corporations as a result of a stock transfer from Marino on or about May 8, 2009.  On July 2, 2009, the court approved the joint administration of the three cases.  The filing of these bankruptcy cases arose out of a dispute between Marino and his daughter, Dena Fredrickson (Fredrickson), who is an attorney, as to the control, operation and ownership of the Corporations.

On August 1, 2008, Marino had filed suit in state court for declaratory judgment against Frederickson and the Corporations, entitled "Charles B. Marino vs. Dena Frederickson, Italian-American Oil Co. and Dinosaur Oil and Gas, Inc." and pending under Cause No. 2008-46476 in the 190th Judicial District, Harris County, Texas, (hereinafter referred to as the

"Harris County suit"). Marino requested that he be declared the sole beneficial owner of all shares of the Corporations and he deposited two cashier's checks (obtained by Marino from the Corporations' accounts) in the amount of $106,000 into the state court's registry. On February 13, 2009 the Harris County suit was mediated and settled and a Rule 11 Settlement Agreement was filed on February 25, 2009. On March 5, 2009, pursuant to the Settlement Agreement, Frederickson transferred the stock in Dinosaur and Italian-American to Marino upon Marino's payment to her of $125,000 and attorney's fees. Thereafter, disputes arose as to the issue of the parties' compliance with the terms of the Settlement Agreement. As a result of this dispute, certain entities that owed money to Dinosaur and Italian-American withheld payment.

On March 24, 2009, the Railroad Commission of Texas (RRC), through the Texas Attorney General's Office, intervened in the Harris County suit in an effort to execute on an Agreed Final Judgment against Marino which was rendered on June 14, 2001 in a separate state court case entitled "State of Texas v. Charles B. Marino" and pending under Cause No. 98-12902 in the 250th Judicial District, Travis County, Texas (hereinafter referred to as the "Travis County suit"). The Travis County suit was initiated in 2001 by the RRC against Marino to bring various oil

and gas leases, for which Marino was the operator of record, into compliance with the Texas Natural Resource Code and Statewide rules promulgated by the RRC. Ultimately, Marino defaulted on the Agreed Final Judgment, the leases remain noncompliant and according to the RRC, the conditions at the leases constitute a continuing threat of pollution.

Prior to intervening in the Harris County suit and in an attempt to execute on the Agreed Final Judgment, on March 20, 2009, the RRC obtained an Order for Turnover in the Travis County suit. The March 20, 2009 Turnover Order required Marino, as well as Dinosaur and Italian-American, to turnover to the State of Texas, among other things, all right, title and interest to the Rule 11 Settlement Agreement, including the stock of Dinosaur and Italian-American. To enforce this Turnover Order, the RRC intervened in the Harris County suit on March 24, 2009. Marino opposed the intervention and turnover on a number of grounds, including that turnover directly to a judgment creditor is prohibited. As a result, the RCC sought another order from the court in the Travis County suit and on May 7, 2009, that court signed a second Turnover Order and appointed a Receiver, Peter E. Pratt, Jr. for Marino. The May 7, 2009 Order vested Pratt with the fullest authority under Texas law to seize all non-exempt property of Marino, that is in his actual or constructive

possession or control and pay that money to the RRC.

According to Marino and Stone, Stone loaned Marino the money to make the payments to Fredrickson, pursuant to the Rule 11 Settlement Agreement in the Harris County suit, in exchange for a pledge of the Corporations' stock.  Marino and Stone claim that, on May 8, 2009, Marino transferred the stock to Stone in lieu of foreclosure and in cancellation of a loan in the approximate amount of $300,000 made by Stone to Marino.  The transfer was memorialized in a letter of that same date. Testimony of Marino, 2004 Examination, October 6, 2009; Testimony of Stone.

On May 22, 2009 Marino filed chapter 11.  On May 26, 2009, the Receiver, Pratt, intervened in the Harris County suit. On May 27, 2009, the court in the Travis County suit signed an Order authorizing the Receiver to vote the shares of stock of Dinosaur and Italian-American.  On May 28, 2009, Texas Energy, an entity owing money to Dinosaur and Italian-American, filed an Interpleader Complaint to deposit these funds into the registry of the court in the Harris County suit.  On this same date, Dinosaur and Italian-American filed chapter 11.  On June 5, 2009, the court in the Harris County suit ordered that Texas Energy's funds be deposited in that court's registry.  On August 6, 2009, Dinosaur and Italian-American removed the Harris County suit to

bankruptcy court and it was assigned Adversary No. 09-3307.

## Conclusions of Law

The court may address the question of whether to dismiss a Chapter 11 case pursuant to Section 1112(b) of the Bankruptcy Code *sua sponte*. In re Starmark Clinics, LP, 388 B.R. 729 (Bankr. S.D. Tex. 2008).

Good faith upon filing is an implied requirement. Courts consider the totality of the circumstances in determining whether there is cause for dismissal for lack of good faith. The aim of the good faith standard is to determine whether the real motivation for filing is to abuse the reorganization process and to cause hardship or to delay creditors by resorting to Chapter 11, without an intent or ability to reorganize. See Matter of Little Creek Development, 779 F.2d 1068 (5th Cir. 1986).

This court has generally found cause to dismiss cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute. See e.g., In re Starmark Clinics, LP, 388 B.R. 729 (Bankr. S.D. Tex. 2008); In re Kemper, Case No. 04-82663-G3-7 (Slip Op. May 18, 2006); In re Gamma Env. Services, Inc., Case No. 01-32689-H3-7 (Slip Op. July 18, 2001); In re Leslie, Case No. 98-35386-H3-11 (Slip Op. February 12, 1999).

See also In re Ravick Corp., 106 B.R. 834 (Bankr. D.N.J. 1989); Argus Group 1700, Inc. v. Steinman (In re Argus Group 1700, Inc.), 206 B.R. 757 (E.D. Pa. 1997). Cause for dismissal also includes alleged lack of proper corporate authority to act by a corporate agent. The authority to file a bankruptcy petition on behalf of a corporation must derive from state corporate governance law, and the corporate by-laws. See Price v. Gurney, 324 U.S. 100, 106, 65 S.Ct. 513, 516, 89 L.Ed. 776 (1945); Keenihan v. Heritage Press, Inc., 19 F.3d 1255, 1258 (8th Cir. 1994).

At the time of the filing of the bankruptcy petitions, the dispute as to the control, operation and ownership of the Corporations was unresolved. It remains unresolved. Further, issues in the Harris County suit, which existed at the time of the bankruptcy filings, remain: the parties' compliance with the terms of the Rule 11 Settlement Agreement; disposition of money held in the court registry of Harris County; the intervention into the Harris County suit by the RRC and the Receiver (for all of Marino's non-exempt assets) appointed by the Travis County court; authorization of the Receiver to vote the shares of stock of Dinosaur and Italian-American; and the pendency of an interpleader cause of action whereby additional money, owed to the Corporations, were to be deposited into the Harris County

court registry.  The parties vying for control over the Corporations are closely related: Marino and his fiancee, Stone, on the one side; and his daughter, Frederickson, on the other. Due to the personal relationship between Stone and Marino, the court finds that their interests are aligned.

The information contained on the schedules filed by the Dinosaur and Italian-American do not, on their face, support the necessity for filing bankruptcy.  The schedules filed on behalf of Dinosaur reflect assets of $1,187,252.11 and liabilities of $259,101.34.  The schedules of Italian-American reflect assets of $698,603.60 and liabilities of $386,710.23.  Italian-American's Schedule "A" reflects that Italian-American valued its one piece of real property at the "acquisition cost" of $46,200 due to the fact that a "[p]rotest of $307,064 HCAD [Houston County Appraisal District] valuation is pending."  However, the court notes that on its Financial Statement ending January 31, 2009, attached as an Appendix to the Voluntary Petition, Italian-American listed the property's value as $190,000.  Case No. 09-33649-H3-11, Docket No. 22; Case No. 09-33650-H3-11, Docket Nos. 24 and 25.

Marino's schedules reflect assets of $540,318.54 and liabilities of $680,789.09.  Although his schedules reflect more liabilities than assets, the totals include assets and claims that are valued as unknown, zero, or $1.00.  These vague

valuations can skew a Debtor's financial status. Although Debtor lists claims based upon his being a Guarantor for notes executed by Italian-American, the schedules do not reflect that Marino has any interests in the Corporations. Docket No. 24.

Marino contends that he no longer has any interests in the Corporations as a result of his stock transfer to Stone. The court makes no finding on the issue of ownership of the Corporations but does note that Marino's contention is questionable in light of the following facts: the person to whom he transferred the Corporations' stock was his fiancee; the transfer occurred after the Settlement Agreement in the Harris County suit was fraying; the transfer was close in time to when the RRC and the Travis County Receiver intervened in the Harris County suit to execute on the Travis County turnover order; if Stone is found to be the owner of the Corporations, collection efforts against Marino by the RRC, on its own or with the aid of the Receiver, would be difficult; and the control, management and ownership of the Corporations are still at issue.

The two party dispute was initiated by Marino, in his individual capacity, by filing the declaratory suit in Harris County. The court notes the RRC's allegations of Marino's history of attempts to conceal his assets from creditors by transferring the assets to family members, to be held in name

only.  In the Harris County suit, Marino opposed the intervention by the RRC and attacked the validity of the Travis County Turnover Order.  Adversary 09-3307, Docket No. 12.  It was only after the RRC intervened in the Harris County suit (on March 24, 2009) to execute on the Travis County Turnover Order, and after the Travis County court appointed the Receiver and issued the second Turnover Order (on May 7, 2009), that Marino transferred the stock in the Corporations to Stone (on May 8, 2009) and filed his chapter 11 petition (on May 22, 2009).  Marino's bankruptcy petition was filed before the Receiver could comply with the Travis County Turnover Order which would have permitted liquidation of certain assets of Marino in satisfaction of the Final Agreed Judgment in favor of the RRC.  The court finds that the totality of the circumstances surrounding Marino's individual bankruptcy filing is indicative of bad faith.

      The authority for a corporate representative to file bankruptcy on behalf of a corporation is based upon the structure of the corporation's ownership or equity interests, its by-laws and other articles of corporate governance, and its management.  Based upon the time-line of events and the status of the ownership dispute in the Harris County suit at the time of the bankruptcy filings, the appointment of a Receiver for Marino's assets by the Travis County court, and the eleventh hour transfer

of the Corporations' stock from Marino to Stone, Stone's authority to file the bankruptcy petitions on behalf of Dinosaur and Italian-American is questionable.

Debtors, Dinosaur and Italian-American, claim that they have not been able to collect funds receivable or make monthly payments on the secured debt because all of the funds are held in suspense by two pipeline companies, remain in the Harris County court registry, or have been seized by the Receiver.  These circumstances result from the dispute over the ownership and control of the Corporations.  They will continue until that dispute is resolved, whether in the Harris County suit or in the bankruptcy court.  The dispute is already pending in another forum, the Harris County court, and has been since August 1, 2008, almost two and one-half years.  In their Trial Memorandum, the Corporations claim that they "intend to move to dismiss the entire adversary proceeding *on the merits* because the case settled and the post-settlement claims advanced by the parties are matters better and more efficiently addressed" in this court by the parties filing proofs of claim.  Docket No. 117.  It appears that the Corporations contend that there is no longer a dispute as to their ownership or a dispute concerning the compliance with, and validity of, the Rule 11 Settlement Agreement.  This contention is not supported by the facts.  The

11

court finds that the bankruptcy filings are an attempt to circumvent the jurisdiction of the state court by seeking another forum.

In light of the filing of the bankruptcy petitions to gain an unfair advantage in the litigation, the absence of any clear need for financial reorganization, and the conflicting claims asserted in the Harris County suit as to the ownership, management, and control of the Corporations, which assertions can be dealt with in that pending litigation, the court concludes, on the totality of the circumstances, that the above captioned Chapter 11 cases should be dismissed.

Based on the foregoing, a separate Judgment will be entered dismissing the above captioned Chapter 11 cases.

Signed at Houston, Texas on February 9, 2010.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE